IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Stephanie Levette Cason, individually and as Personal Representative of the Estate of J.D. Pitts-Johnson, a deceased minor, and Rakeem Rashaud Johnson, father of J.D. Pitts-Johnson, the deceased minor,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Greenville;<br>J. H. Thompson, in his individual and official capacity as Chief of Police of the Greenville City Police Department;<br>Andrew Hansen, in his individual capacity;<br>Joshua Andrew Pettit, in his individual capacity and Andrew Hamilton, in his individual and supervisory capacity,<br><br>Defendants. | Civil Action No. _____<br>(JURY TRIAL DEMANDED)<br><br>COMPLAINT |

The Plaintiff Stephanie Levette Cason, individually and as personal representative of the Estate of J.D. Pitts-Johnson, a deceased minor, and Rakeem Rashaud Johnson, father of J.D. Pitts-Johnson, by and through their undersigned counsel, brings this action against Defendants City of Greenville, J. H. Thompson, in his individual and official capacity as Chief of Police of the Greenville City Police Department, Andrew Hansen, a Greenville City police officer in his individual capacity, Joshua Andrew Pettit, a Greenville City police officer in his individual capacity, and Andrew Hamilton, a Greenville City police officer in his individual and supervisory capacity, and shows the Court as follows:

1

## PARTIES

1. Plaintiff Stephanie Levette Cason ("Ms. Cason") is the maternal grandmother and the duly appointed Personal Representative of the Estate of J. D. Pitts-Johnson, deceased. Ms. Cason is a citizen and resident of 17 Hillside Lane, Greenville, South Carolina 29605. She brings this action on behalf of the Estate pursuant to South Carolina's Survival Statute, South Carolina Code Annotated §15-5-90, and Wrongful Death Act, South Carolina Code Annotated §15-51-10 et seq.

2. Plaintiff Rakeem Rashaud Johnson ("Mr. Johnson") is the biological father and statutory beneficiary of the deceased minor, J.D. Pitts-Johnson. He is a citizen and resident of Greenville County, South Carolina, residing at 37 Reeves Avenue, Greenville, South Carolina 29605. Mr. Johnson brings this action in his individual capacity as a statutory beneficiary under South Carolina's Wrongful Death Act and as a natural parent with standing under federal civil rights law.

3. Defendant City of Greenville ("City") is a municipal corporation and political subdivision of the State of South Carolina. At all relevant times, the City, acting through the Greenville City Police Department, was responsible for establishing and enforcing policies, practices, customs, and procedures governing the training, supervision, discipline, and conduct of its police officers. The City is a "person" within the meaning of 42 U.S.C. § 1983 and may be held liable for constitutional deprivations caused by its official policies, customs, practices, and/or failure to train or supervise, as further alleged herein.

4. Defendant J. H. Thompson ("Defendant Thompson") is, and at all relevant times was, the Chief of Police of the Greenville City Police Department. He is sued in his individual and

official capacities. At all relevant times, Defendant Thompson acted under color of state law and was a final policymaker for the Greenville City Police Department with responsibility for officer training, supervision, hiring, discipline, use-of-force policies, and the enforcement of departmental customs and practices. Defendant Thompson personally and/or through established policies, customs, practices, and deliberate indifference, caused or contributed to the constitutional violations alleged in this Complaint.

5.     Defendant Andrew Hansen ("Defendant Hansen") is, and at all relevant times was, a sworn law enforcement officer employed by the Greenville City Police Department. He is sued in his individual capacity. At all relevant times, Defendant Hansen acted under color of state law and within the course and scope of his employment for the Greenville City Police Department. Defendant Hansen participated directly in the events forming the basis of this action and is liable for the unconstitutional acts and omissions described herein.

6.     Defendant Joshua Andrew Pettit ("Defendant Pettit") is, and at all relevant times was, a sworn law enforcement officer employed by the Greenville City Police Department. He is sued in his individual capacity. At all relevant times, Defendant Pettit acted under color of state law and within the course and scope of his employment for the Greenville City Police Department. Defendant Pettit participated directly in the events forming the basis of this action and is liable for the unconstitutional acts and omissions described herein.

7.     Defendant Andrew Hamilton ("Defendant Hamilton") is, and at all relevant times was, a sworn law enforcement officer, employed by the Greenville City Police Department who served as a supervising officer over Defendants Hansen and Pettit. He is sued in his individual and supervisory capacities. At all relevant times, Defendant Hamilton acted under color of state law

and within the course and scope of his employment for the Greenville City Police Department.

8. Defendant Hamilton had a duty to supervise, control, and intervene to prevent unconstitutional conduct by officers under his command, and he is liable for his own acts and omissions, including but not limited to failure to supervise, failure to intervene, ratification, and deliberate indifference to known risks, as further alleged herein.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as this case arises under the laws of the United States, including 42 U.S.C. §1983, which provides a cause of action for the deprivation of constitutional rights under color of state law.

10. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims, including wrongful death and survival claims, pursuant to 28 U.S.C. §1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. This Court has personal jurisdiction over all Defendants because they reside in, are employed in, or conduct substantial activities in the State of South Carolina and the County of Greenville, and because the events giving rise to the claims occurred within this jurisdiction.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Greenville County, South Carolina, which is located within the Greenville Division of the District of South Carolina.

**GENERAL ALLEGATIONS**

13. Plaintiff reaffirms and reiterates all the allegations above as if fully repeated and incorporated verbatim herein.

14. On or about May 11, 2023, at approximately 9:40 PM, 14-year-old J.D. Pitts-Johnson ("J.D.") was traveling as a rear-seat passenger in a 2021 KIA Forte ("Forte") operated by D. Young, Jr. ("D. Young"), a minor, along with two other minor passengers. The minors were traveling through Greenville County, South Carolina.

15. Around the same time, Defendant Hansen, operating a marked patrol vehicle of the Greenville City Police Department ("GCPD"), observed the Forte and began to follow it based on a suspicion that the vehicle may have been stolen. Defendant Hansen was in full uniform and acting under color of state law.

16. While J.D. and others were traveling Southbound on Secondary 5, Old Piedmont Highway, Defendant Hansen, traveling in the opposite direction on Easley Bridge Road, observed the Forte approaching. Without confirming any criminal conduct or verifying whether the vehicle was stolen, Hansen pulled out behind the Forte to initiate a traffic stop. Defendant Pettit, in a separate GCPD patrol vehicle, moved in behind Defendant Hansen as the Forte continued traveling down Easley Bridge Road. (See **Exhibit A** - Accident-Vehicle-Pursuit-Review).

17. Defendant Pettit followed closely behind Defendant Hansen in a separate marked patrol unit, and upon information and belief, Defendant Pettit called in the pursuit over the GCPD radio channel, designating Defendant Hansen as the primary pursuit officer. (See **Exhibit B** GCPD Incident and Supplemental Reports).

18.     Both officers, without proper confirmation that the Forte was stolen and without any visual identification of criminal conduct by the passengers, escalated the encounter by initiating a high-speed pursuit through residential neighborhoods and city streets. At one point during the pursuit, Defendants Hansen and Pettit attempted a Precision Immobilization Technique (PIT) maneuver on the Forte, despite the presence of child passengers and the lack of exigent circumstances justifying the force.

19.     The pursuit lasted approximately four minutes, during which the officers reached speeds exceeding 95 miles per hour—nearly three times the posted speed limits—despite being in densely populated residential areas with known traffic patterns.

20.     As the officers continued the chase, D. Young, the minor driver of the Forte, panicked and attempted to evade law enforcement by running red lights and driving dangerously through intersections congested with traffic.

21.     At no time during the pursuit did Defendants Hansen or Pettit effectively communicate the high-risk nature of the chase, including the presence of other vehicles, red lights, and potential pedestrians. Instead, radio communications falsely indicated "no traffic" or "negative traffic."

22.     Despite these dangerous conditions, and in violation of GCPD policy and generally accepted police practices, the pursuit was not terminated or slowed. Defendants Chief, Mr. Thompson and Supervising Officer Hamilton failed to intervene, despite their ability and duty to monitor pursuits and protect the public.

23.     At no point did Defendants Hamilton or Thompson order the pursuit to cease, despite the presence of multiple high-risk factors such as excessive speed, nighttime visibility,

multiple child occupants in the suspect vehicle, and the lack of confirmation that the Forte had been stolen.

24. As a direct result of this unauthorized and excessive pursuit, the Forte lost control and crashed into a fence along Grove Road in Greenville, South Carolina.

25. The impact resulted in the deaths of two minors: J.D. and D.A. Workman, Jr., and caused serious injury to the remaining passengers.

26. J.D. was pronounced dead later that evening at Prisma Health in Greenville, South Carolina. (See **Exhibit C** – Death Certificate of J.D. Pitts-Johnson).

27. Following the crash, law enforcement charged the minor driver, D. Young, with multiple offenses. No charges were ever brought against J.D., nor was there any evidence that J.D. knew the Forte was stolen or had any involvement in its alleged theft. (See **Exhibit D** – Highway Police Investigation Report).

28. An independent expert, Dr. Scott M. Mourtgos, later concluded that the officers' conduct during the pursuit was inconsistent with generally accepted policing practices and violated the GCPD's own vehicle pursuit policy. (See **Exhibit E** – Expert Report, Page 31).

29. Nonetheless, an internal review by GCPD cleared the officers, finding their conduct "within policy," and imposed no disciplinary action, despite the independent expert's conclusions and the officers' prior disciplinary histories.

30. Defendant Pettit had a documented history of involvement in vehicle pursuits and preventable traffic collisions. GCPD records reflect that Pettit had received prior counseling, remedial training, and discipline due to his unsafe driving during law enforcement operations. (See **Exhibit F** – Concise Employee History; and **Exhibit G** – Employee Disciplinary History).

31. Despite this history, GCPD permitted Defendant Pettit to continue engaging in high-risk pursuits, including the May 11, 2023, incident, without adequate supervision, retraining, or restrictions, demonstrating deliberate indifference to known safety risks.

32. Defendant GCPD, acting through its policymakers and supervisory personnel, maintained a custom, policy, and practice of tolerating unconstitutional pursuit tactics and failing to train or discipline officers who engaged in such conduct.

33. Since 2018, Plaintiff Stephanie Levette Cason ("Ms. Cason") had legal and physical custody of her grandson J.D. She served as his primary caregiver following the incarceration of his father and the death of his mother, Keeaira Shelease Pitts. (See **Exhibit H** – Order for Non-Emergency Removal).

34. J.D.'s mother, Keeaira Shelease Pitts, passed away on October 3, 2021. (See **Exhibit I** – Death Certificate of Keeaira Shelease Pitts).

35. J.D.'s father, Plaintiff Rakeem Rashaud Johnson ("Mr. Johnson"), was incarcerated at the time of the fatal crash. Although separated by incarceration, Mr. Johnson maintained regular contact with J.D. and remained an active emotional presence in his life.

36. J.D. struggled in the years following the loss of his mother and the effective loss of his father to incarceration. He faced behavioral and emotional challenges, resulting in placement in alternative educational programs and brief juvenile incidents. (See **Exhibit J** – School Assignment to Alternative Program).

37. In April 2023, law enforcement previously encountered J.D. in a separate incident involving another KIA vehicle, which was handled through the juvenile justice system. J.D. was returned to the custody of Ms. Cason. (See **Exhibit K**– April 2023 Incident Report).

38. In early May 2023, shortly before the fatal crash, law enforcement again responded when J.D. ran away from home. He was safely returned to Ms. Cason, who reaffirmed her commitment to care for him. (See **Exhibit L** – May 2023 Incident Report).

39. On or about July 8, 2025, the Probate Court for Greenville County, South Carolina, in Estate Action No. 2025ES2301703, appointed Ms. Cason as the Personal Representative of the Estate of J.D. Pitts-Johnson. (See **Exhibit M** – Certificate of Appointment).

40. Plaintiffs bring this action for violations of federal constitutional rights under 42 U.S.C. §1983 and for associated state-law claims, including wrongful death, survival, negligent supervision, and municipal liability.

41. Plaintiffs have exhausted all applicable administrative remedies, including application to the South Carolina Crime Victim Compensation Fund. The initial application was denied based on alleged unlawful conduct by J.D., but the decision was later reconsidered and a reduced award granted.

42. As a result of this incident, Ms. Cason suffers from severe emotional trauma, including depression, anxiety, and insomnia, along with the profound loss of companionship and comfort from her beloved grandson.

43. Mr. Johnson similarly suffers from enduring grief, mental anguish, and psychological pain. He remains traumatized by the fact that he could not be present with his son during his final moments and continues to live with the pain of that separation.

44. At the time of his death, J.D. was a 14-year-old child, not an adult criminal, and was entitled to the protections of the United States Constitution and laws, including the right to substantive due process and to be free from state-created danger.

45. Aggrieved by the emotional pain and damage suffered by Plaintiffs related to the incident and the death of J.D. due to the actions of all the Defendants, Plaintiffs bring this action against Defendants for damages under the following causes of action.

## FIRST CAUSE OF ACTION
### Violation of 42 U.S.C. §1983 – Municipal Liability / Monell Claim
### (Against Defendant City of Greenville)

46. Plaintiffs reallege all foregoing allegations as if fully restated here.

47. At all relevant times, Defendant City was a municipal corporation organized under the laws of the State of South Carolina and acted through its agency, the GCPD.

48. Defendant City is a "person" within the meaning of 42 U.S.C. §1983 and is subject to suit for constitutional violations committed by its officials and employees pursuant to a municipal policy, custom, or practice.

49. On or about May 11, 2023, as set forth above, officers employed by the City—including Defendants Hansen and Pettit—violated the constitutional rights of J.D. by initiating and continuing a high-speed pursuit in a manner that was deliberately indifferent to the safety and constitutional rights of the minor passengers, including J.D.

50. The actions of the officers were not isolated incidents but were the result of long-standing and widespread customs, policies, or practices maintained by the City, including but not limited to:

   a. A policy or custom of permitting high-speed pursuits in residential areas without adequate justification or oversight;

   b. A failure to adopt or enforce appropriate vehicle pursuit policies consistent with national standards and constitutional limitations;

    c. A failure to properly train officers in the constitutional limits of vehicle pursuits involving known minor passengers;

    d. A failure to discipline, retrain, or restrict officers with known histories of unsafe conduct during pursuits, including Defendant Pettit.

51. Prior to the incident, Defendant Pettit had a documented history of unsafe driving and pursuit-related misconduct, including preventable vehicle collisions and resulting disciplinary actions. Despite this, the City failed to properly supervise or limit his participation in pursuits.

52. These customs and failures constitute deliberate indifference to the known or obvious consequences of such conduct, including the risk of serious injury or death to innocent passengers, especially minors.

53. Further, the City's internal review after the fatal incident found that the officers' actions were "within policy," despite expert findings to the contrary. This post-incident ratification of unconstitutional conduct further evidences the City's tolerance and approval of such conduct.

54. As a direct and proximate result of the unconstitutional policies, customs, and deliberate indifference of Defendant City, J.D. suffered fatal injuries, and Plaintiffs suffered constitutional harms, including the loss of companionship and severe emotional distress.

55. Plaintiffs seek all available legal and equitable relief, including compensatory damages, attorneys' fees pursuant to 42 U.S.C. §1988, and such other relief as the Court deems just and proper.

    WHEREFORE, the Plaintiffs respectfully request judgment against Defendant City of Greenville as follows:

    a. An award of compensatory damages in an amount to be determined at trial for the

      wrongful death of J.D. Pitts-Johnson, including for his pain and suffering, loss of life, and the emotional injuries to his surviving family members;

  b. An award of damages for loss of companionship, society, comfort, and support suffered by Plaintiffs Stephanie Cason and Rakeem Johnson;

  c. An award of funeral and burial expenses and other losses incurred by the Estate of J.D. Pitts-Johnson;

  d. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988;

  e. Declaratory relief finding that the policies and practices of Defendant City of Greenville violated the constitutional rights of the decedent;

  f. Any other relief the Court deems just and proper.

## SECOND CAUSE OF ACTION
**Violation of 42 U.S.C. §1983 - Substantive Due Process**
**(Right to Life and Bodily Integrity- Against Defendants Hansen, Pettit, Hamilton, and Thompson in their Individual Capacities)**

56. Plaintiffs reallege all foregoing allegations as if fully restated here.

57. At all relevant times, Defendants Hansen, Pettit, Hamilton, and Thompson were employees and agents of the GCPD, acting under color of state law and within the scope of their employment.

58. As a minor and unarmed passenger in a vehicle suspected of being stolen, J.D. had a clearly established right under the Fourteenth Amendment to the United States Constitution to substantive due process, including the right to life, liberty, and bodily integrity, and to be free from reckless governmental conduct that placed him in danger.

59. Defendants Hansen and Pettit violated J.D.'s substantive due process rights by initiating and engaging in a high-speed vehicular pursuit at speeds exceeding 95 miles per hour,

through residential neighborhoods, despite:

    a. Lacking confirmation that the Forte was stolen;

    b. Having no evidence of violent criminal behavior;

    c. Knowing or having reason to know that minors, including J.D., were present in the vehicle.

60. During the pursuit, Defendants Hansen and Pettit attempted a PIT maneuver on the Forte—an aggressive and dangerous tactic that significantly increased the risk of death or serious injury to the juvenile passengers.

61. The conduct of Defendants Hansen and Pettit was conscience-shocking and constituted deliberate indifference or gross negligence toward J.D.'s fundamental rights, as it needlessly escalated a non-violent situation into a deadly one, culminating in the fatal crash.

62. Defendants Hamilton and Thompson, as supervising and command officers, were aware of the pursuit in real time and had the authority and duty to intervene, restrict, or terminate it. Despite multiple high-risk factors—such as the extreme speed, nighttime pursuit, juvenile passengers, and dense traffic conditions—they failed to act.

63. Defendant Hamilton also failed to properly supervise officers under his command and failed to take necessary corrective or disciplinary action against known repeat offender Pettit, despite prior pursuit-related infractions documented in GCPD disciplinary records.

64. Defendant Thompson, as Chief of Police, was responsible for setting and enforcing departmental policies and had final policymaking authority. His failure to implement adequate pursuit protocols, properly train officers, or take disciplinary action after the incident constitutes deliberate indifference to the constitutional rights of individuals like J.D.

65. As a direct and proximate result of the actions and inactions of these individual Defendants, J.D. suffered fatal injuries and was deprived of his fundamental rights under the Fourteenth Amendment to be free from unlawful and reckless state conduct that resulted in his death.

66. As a further direct and proximate result of the actions and inactions of these individual Defendants, J.D. ultimately died on May 11, 2023, at Prisma Health in Greenville, South Carolina, leaving his Estate and family permanently deprived of his life, companionship, love, and support.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants Hansen, Pettit, Hamilton, and Thompson, jointly and severally, as follows:

a. An award of compensatory damages for the wrongful death of J.D. Pitts-Johnson, including conscious pain and suffering, emotional trauma, and loss of life;

b. An award of damages for the emotional distress and loss of companionship suffered by Plaintiffs Stephanie Cason and Rakeem Rashaud Johnson;

c. An award of punitive damages to punish and deter conscience-shocking and deliberately indifferent conduct by public officials;

d. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

e. Any other relief that the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Violation of Substantive Due Process – State-Created Danger Doctrine**
**(Against Defendants Hansen and Pettit in their Individual Capacities)**

67. Plaintiffs reallege all the foregoing allegations as if fully restated here.

68. At all relevant times, Defendants Hansen and Pettit were sworn officers of the

GCPD, acting under color of state law and within the scope of their duties.

69. Under the Fourteenth Amendment to the United States Constitution, individuals possess a substantive due process right to be free from governmental conduct that affirmatively places them in danger or worsens their position relative to private threats not created by the state.

70. J.D. was a 14-year-old, unarmed passenger in a vehicle driven by another minor. He posed no immediate threat to the public or to officers and had committed no violent crime. Defendants Hansen and Pettit knew or should have known that the vehicle contained minor passengers, including J.D.

71. Despite the absence of exigent circumstances, confirmed criminal conduct, or a verified stolen vehicle report, Defendants Hansen and Pettit affirmatively chose to initiate and continue a high-speed pursuit, exceeding 95 miles per hour, through residential neighborhoods with active traffic.

72. By doing so, Defendants substantially increased the risk of serious injury or death to J.D., who was previously in a position of relative safety as a non-driving, non-fleeing passenger.

73. Defendants further escalated the danger by attempting a PIT maneuver on the vehicle, a known high-risk tactic, despite being aware that the car was occupied by multiple juveniles and was traveling at excessive speeds.

74. These affirmative acts by Defendants Hansen and Pettit directly created or enhanced the danger faced by J.D., resulting in a fatal crash that would not have occurred but for the officers' unconstitutional conduct.

75. The conduct of Defendants was conscience-shocking, reckless, and deliberately indifferent to the constitutional rights and physical safety of the minors in the vehicle, including

J.D.

76. As a direct and proximate result of the unconstitutional actions of Defendants Hansen and Pettit, J.D. suffered fatal injuries, and Plaintiffs suffered emotional trauma, loss of companionship, and other constitutional and statutory injuries.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants Hansen and Pettit as follows:

a. An award of compensatory damages for the wrongful death of J.D. Pitts-Johnson and the emotional injuries suffered by his family;

b. An award of punitive damages to deter similar constitutional violations and punish conscience-shocking conduct;

c. An award of attorneys' fees and litigation costs under 42 U.S.C. §1988;

d. Any other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION
**Violation of 42 U.S.C. §1983 – Supervisory Liability for Constitutional Violations**
**(Against Defendants J.H. Thompson and Andrew Hamilton**
**in their Individual Capacities)**

77. Plaintiffs reallege all the foregoing allegations as if fully restated here.

78. At all relevant times, Defendant Thompson served as the Chief of Police for the GCPD, and Defendant Hamilton served as a supervising officer within GCPD. Both were acting under color of state law and within the scope of their supervisory responsibilities.

79. As supervising officers, Defendants Thompson and Hamilton had a constitutional duty to ensure that the officers under their command were properly trained, supervised, and disciplined so as not to violate the rights of individuals, including the rights of minors such as J.D.

80. Defendants Thompson and Hamilton knew or reasonably should have known of the

substantial risk of harm created by unsafe pursuit practices at GCPD, and specifically, of Defendant Pettit's documented disciplinary history, including previous vehicle pursuit incidents and preventable collisions.

81.     Despite this knowledge, Defendant Hamilton permitted Defendants Hansen and Pettit to initiate and continue a high-speed pursuit of a vehicle occupied by multiple minors without proper justification and in violation of GCPD policy and general policing standards. At no point did Hamilton intervene or order the pursuit terminated, despite receiving or having access to live radio communications indicating escalating danger.

82.     Defendant Thompson, as the final policymaker for GCPD, failed to implement and enforce adequate policies, training, and supervision to prevent dangerous vehicle pursuits under circumstances involving juveniles and non-violent offenses. He also failed to ensure disciplinary follow-up on prior misconduct by Defendant Pettit.

83.     Both Defendants had the authority, opportunity, and obligation to prevent the constitutional violations committed by Defendants Hansen and Pettit but failed to act—amounting to deliberate indifference to the known and obvious risks to J.D.'s safety and life.

84.     These supervisory failures were causally connected to the constitutional injuries suffered by J.D., including the deprivation of his substantive due process rights under the Fourteenth Amendment.

85.     As a direct and proximate result of the deliberate indifference and supervisory failures of Defendants Thompson and Hamilton, J.D. suffered fatal injuries, and Plaintiffs suffered constitutional and compensable harms.

WHEREFORE, the Plaintiffs respectfully request judgment against Defendants Thompson and Hamilton, individually, as follows:

a. An award of compensatory damages for the wrongful death of J.D. Pitts-Johnson and the emotional distress suffered by his family;

b. An award of punitive damages to punish and deter grossly indifferent supervisory conduct;

c. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

d. Such other relief that the Court deems just and proper.

Respectfully submitted,

By: s/ Lola Stradford Richey
Lola Stradford Richey
South Carolina District Court No.: 06911
Post Office Box 10916
Greenville, South Carolina 29603
(864) 467-0503 (Office)
(864) 467-0646 (Fax)
lawfirm@richeyandrichey.com
Attorney for Plaintiffs

Wednesday, December 3, 2025
Greenville, South Carolina