IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Stephanie Levette Cason, *Individually and as Personal Representative of the Estate of J.D. Pitts-Johnson, a deceased minor*; Rakeem Rashaud Johnson, *father of J.D. Pitts-Johnson, the deceased minor*, | ) ) ) ) ) ) ) ) | Case No. 6:25-cv-13712-JDA |
| Plaintiffs, | ) ) ) | **OPINION AND ORDER** |
| v. | ) ) ) | |
| City of Greenville, J.H. Thompson, *in his individual and official capacity as Chief of Police of the Greenville City Police Department*; Officer Andrew Hansen, *in his individual capacity*; Joshua Andrew Pettit, *in his individual capacity*; Andrew Hamilton, *in his individual and supervisory capacity*, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on Defendants' motion to dismiss.  [Doc. 7.] Plaintiffs filed this action on December 3, 2025.  [Doc. 1.]  On December 16, 2025, Defendants filed a motion to dismiss.  [Doc. 7.]  The motion is now fully briefed [Docs. 9; 10; 19] and ripe for review.  For the reasons below, the Court grants the motion.

**BACKGROUND**[1]

This case stems from the tragically fatal outcome of a high-speed police chase initiated on May 11, 2023, by Defendants Greenville City Police Officers Andrew Hansen

_____

[1] The facts included in this Background section are taken directly from the Complaint. [Doc. 1.]

and Josha Andrew Pettit (the "Pursuing Officers").  [Doc. 1 ¶¶ 14–21, 24–26.]  On that day, at approximately 9:40 p.m., 14-year-old J.D. Pitts-Johnson ("J.D.") and two other minors were passengers in a 2021 Kia Forte (the "Kia") driven by D. Young Jr. ("Young"), also a minor.  [*Id.* ¶ 14.]  Officer Hansen, in his marked Greenville City Police Department ("GCPD") patrol vehicle, began following the Kia and initiated a traffic stop based on his suspicion that the Kia was stolen.  [*Id.* ¶¶ 15, 16.]  Defendant Pettit joined the pursuit in a separate GCPD patrol vehicle.  [*Id.* ¶¶ 16–17.]  Officer Pettit also called in the pursuit over the GCPD radio channel, designating Officer Hansen as the primary pursuit officer.  [*Id.* ¶ 17.]

The Pursuing Officers chased the Kia for approximately four minutes at speeds exceeding 95 miles per hour—nearly three times the posted limit—through densely populated areas.  [*Id.* ¶ 19.] As the pursuit continued, Young panicked, ran red lights, and drove recklessly through congested intersections.  [*Id.* ¶ 20.]  Even as the danger intensified, the Pursuing Officers did not "effectively communicate the high-risk nature of the chase, including the presence of other vehicles, red lights, and potential pedestrians." [*Id.* ¶ 21.]  Rather, "radio communications falsely indicated 'no traffic' or 'negative traffic.'" [*Id.*]  And at one point, the Pursuing Officers attempted a Precision Immobilization Technique ("PIT") maneuver.[2]  [*Id.* ¶ 18.]  At no point did Defendants GCPD Police Chief J.H. Thompson ("Chief Thompson") or Supervising Officer Andrew Hamilton ("Officer Hamilton") intervene, "despite their ability and duty to monitor pursuits and protect the

---

[2] A PIT maneuver "is a law enforcement pursuit tactic in which a pursuing vehicle suddenly laterally strikes the side-rear of the pursued vehicle, thus causing the pursued vehicle to swing around and come to an unplanned stop."  *PIT maneuver*, WIKIPEDIA, https://en.wikipedia.org/wiki/PIT_maneuver (last visited Apr. 13, 2026).

public." [*Id.* ¶ 22.] The chase ended tragically when the Kia crashed into a fence, killing J.D. and another minor passenger, D.A. Workman, Jr., and seriously injuring the other two occupants. [*Id.* ¶¶ 24–25.]

On December 3, 2025, Plaintiffs filed their Complaint asserting four causes of action under § 1983. [Doc. 1.] Count One alleges municipal liability against Defendant City of Greenville. [*Id.* ¶¶ 46–55.] Count Two alleges violation of J.D.'s substantive due process rights by the four individual Defendants based on J.D.'s right to life and bodily integrity. [*Id.* ¶¶ 56–66.] Count Three alleges that the Pursuing Officers violated J.D.'s substantive due process rights under the state-created danger doctrine. [*Id.* ¶¶ 67–76.] Count Four alleges a claim for supervisory liability against Chief Thompson and Officer Hamilton. [*Id.* ¶¶ 77–85.] As relief, Plaintiffs seek compensatory and punitive damages, attorneys' fees and costs, and any other appropriate relief. [*Id.* at 18.]

## APPLICABLE LAW

### Rule 12(b)(6) Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as

exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

Defendants argue that Plaintiffs fail to state a claim that J.D.'s substantive due process rights were violated.[3] [Doc. 7-1.] Specifically, Defendants argue that Plaintiffs fail to allege that any of the Defendants acted with an intent to harm the suspects physically or worsened their legal plight. [*Id.*]

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The substantive component of the Due Process Clause bars certain government actions regardless of the fairness of the procedures used to implement them." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (alteration and internal quotation marks omitted). "To prove a violation of substantive-due-process rights under the Fourteenth Amendment, a plaintiff must show that a defendant's behavior was

---

[3] Defendants also appear to argue that the individual Defendants are entitled to summary judgment on the basis of qualified immunity. [*Id.* at 1–2.]

5

so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Washington v. Housing Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (internal quotation marks omitted). The question of what sort of conduct violates that standard is one that is central to this case.

The Supreme Court has explained that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). "It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* The Fourth Circuit has noted, however, that "conduct falling in between those two poles— deliberate-indifference conduct which is more than negligence but less than intentional harm—presents a closer call." *Washington*, 58 F.4th at 178.

"Ultimately, the applicable standard of culpability for a substantive-due-process claim—either intent to harm or deliberate indifference—depends on an exact analysis of the context and circumstances of the case." *Id.* (alteration and internal quotation marks omitted). The deliberate-indifference standard applies "only when actual deliberation is practical . . . ." *Lewis*, 523 U.S. at 851. Further, "actual deliberation" does "not mean 'deliberation' in the narrow, technical sense in which it has sometimes been used in traditional homicide law." *Id.* at 851 n.11. Rather, liability for deliberate indifference "rests upon the luxury enjoyed by . . . officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Id.* at 853.

6

*Lewis* governs here.  In that case, a sheriff's deputy ("Smith") and another officer ("Stapp") were in their vehicles after having responded to an unrelated call when Stapp observed two people approaching on a speeding motorcycle.  *Id.* at 836.  Stapp activated his emergency lights, yelled for the people to stop, and attempted to use his car along with Smith's to block the motorcycle's path.  *Id.*  When the motorcycle slowly maneuvered between the two police vehicles and sped off, Smith immediately activated his emergency lights and siren and "began pursuit at high speed."  *Id.* at 837.  After the high-speed pursuit had continued for 75 seconds through a residential neighborhood and oncoming traffic, the motorcycle tipped over as the driver attempted a sharp turn.  *Id.*  By the time Smith slammed on his brakes, the motorcycle driver was out of the way, but the passenger, 16-year-old Lewis, was not.  *Id.*  Smith's patrol car skidded into Lewis, killing him.  *Id.*  Lewis's parents brought a substantive due process claim under § 1983 on Lewis's behalf against Smith and other defendants.  *Id.*

The district court granted summary judgment in favor of Smith on the basis of qualified immunity, and the Ninth Circuit Court of Appeals reversed and remanded for trial.  *Id.* at 837–39.

The Supreme Court granted certiorari and unanimously reversed the Ninth Circuit.  *Id.* at 839, 855.  The Court set aside the question of qualified immunity.  *Id.* at 841.  Addressing the constitutional issue directly, the Court applied the intent-to-harm standard and concluded that no genuine dispute of material fact existed regarding whether Smith violated Lewis's Fourteenth Amendment substantive due process rights.  *Id.* at 854–55.  Specifically, the Court "h[e]ld that high-speed chases with no intent to harm suspects

7

physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."[4] *Id.* at 854.

That is exactly the situation presented in the case at bar. The Pursuing Officers attempted to initiate a traffic stop on suspicion that the Kia was stolen. When Young did not stop and attempted to elude the Pursuing Officers, they, like the officers in *Lewis*, were faced with split-second decisions regarding whether to initiate a high-speed pursuit and, then, whether to discontinue the pursuit.[5] Because Plaintiffs do not plausibly allege that any of the Defendants had the time to make an unhurried decision, in order to state a substantive due process claim, Plaintiffs were required to allege that Defendants either intended "to harm the suspects physically or to worsen their legal plight." *Id.* As Plaintiffs have not alleged such intention on the part of Defendants, the Complaint fails to state a substantive due process claim.[6]

---

[4] The Court suggested in a footnote that the result could be different if a citizen suffered a physical injury or were seriously threatened with one as a result of a police officer's intentional misuse of his vehicle. *Id.* at 854 n.13.

[5] The Complaint alleges that the officers initiated a traffic stop and then subsequently "escalated the encounter by initiating a high-speed pursuit . . . ." [Doc. 1 ¶¶ 16, 18.] The clear inference is that the suspects attempted to elude the Pursuing Officers and took off at a high rate of speed. In any event, the Complaint does not allege facts from which it could be inferred that the Pursuing Officers had the opportunity to make an unhurried decision regarding whether to begin a high-speed pursuit.

[6] Plaintiffs argue that the Pursuing Officers "compounded the danger [of the pursuit] by falsely reporting 'no traffic,' impairing supervisory oversight and prolonging the pursuit" [Doc. 9 at 13], but any such error—assuming it occurred—is not a sufficient basis upon which to justify a reasonable inference of an intent to harm. And, although the Pursuing Officers allegedly attempted a PIT maneuver [Doc. 1 ¶ 18], there is no allegation that that was anything other than a legitimate attempt to make an arrest. Nor is there any allegation that any contact was actually made with the Kia or that the attempted PIT maneuver bore any causal relationship to the Kia crashing.

In arguing that the intent-to-harm standard does not apply here, Plaintiffs quote *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407 (4th Cir. 2020), for the proposition that "['t]he intent-to-harm culpability standard applies to officers responding to an emergency call.'" [Doc. 9 at 7 (quoting *Dean*, 976 F.3d at 415).] However, *Dean* does not suggest that that standard applies *only* when officers are responding to an emergency call, and *Dean* is distinguishable from the instant case as it involved a deputy sheriff who was neither "responding to an emergency" nor "pursuing a suspect." *Dean*, 976 F.3d at 418.

Plaintiffs also argue that the Defendants had time during the approximately-four-minute pursuit to decide to terminate the chase, in contrast to the shorter, 75-second pursuit at issue in *Lewis*. [Doc. 9 at 7–8, 12.] The length of the pursuit is beside the point, however. What matters is whether Defendants had time during the pursuit to make an unhurried decision. *See Mathis v. Anderson County*, No. 8:22-234-DCC-KFM, 2024 WL 4486601, at *16 (D.S.C. May 29, 2024) ("[T]he fact that the pursuit in *Lewis* was shorter than the pursuit here is insufficient to warrant a departure from the intent to harm standard given the totality of the circumstances and the fact that these defendants were forced to make decisions with competing obligations in haste and under pressure."), *Report and Recommendation adopted by* 2024 WL 4024019 (D.S.C. Sept. 3, 2024).

Finally, because Plaintiffs fail to state a claim that Defendants violated J.D.'s rights to substantive due process, they also fail to state a claim against the other Defendants for supervisory or municipal liability. *See Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) (stating that "[b]ecause we hold that [the] plaintiffs failed to state predicate § 1983 claims against the individual officers, we must also hold that all plaintiffs have failed to state supervisory liability [or municipal liability]" claims); *Hinkle v. City of Clarksburg*, 81

9

F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, supervisory and municipal liability claims under § 1983 also fail).  Accordingly, the Court grants Defendants' motion to dismiss.

### CONCLUSION

Wherefore, based upon the foregoing, Defendants' motion to dismiss [Doc. 7] is GRANTED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

April 14, 2026
Greenville, South Carolina